The United States Court of Appeals for the Fifth Circuit is now open according to law. God save the United States and this honorable court. Morning, counsel. Welcome to our end of August sitting, which we pushed back because of the storm, but we're glad to have the chance to hear from you in this case. The first case we have up is the Family Rehab v. Becerra. All right, we're ready, counsel. Thank you, Your Honor, and may it please the court. Kyle Edwards on behalf of HHS. In Sahara Healthcare, this court held that the five-level review scheme that Congress provided for Medicare providers to challenge overpayment determinations provides constitutionally adequate process even when a provider is unable to receive a timely ALJ hearing at the third level of that governing that review scheme. The court concluded that the first two administrative review levels provide two meaningful opportunities to be heard, and those were pre-deprivation review levels. The court also concluded that a provider does not need to wait for an ALJ hearing if there's a backlog and can escalate its appeal past the ALJ level onto the Medicare Appeals Council and then on to review in a federal district court. The provider in this case, Family Rehab, is in all material respects identically situated to the provider in that case, Sahara, and is pressing the same due process claim that this court rejected in Sahara. For that reason, Sahara controls this case and requires reversal of the district court's decision, which was issued before this court decided Sahara. Now, Family Rehab attempts to distinguish Sahara on essentially two grounds. First, Family Rehab relies on certain statistics concerning the disposition of ALJ appeals, and second, Family Rehab claims that it would use an ALJ hearing to present testimony from its patients' providers concerning the care that its patients required and received. My plan today is to walk through briefly why neither of these arguments rebuts the conclusion that Family Rehab, like the provider in Sahara, has received constitutionally adequate process. I'll start with the statistics issue, unless it would be more helpful for the court if I start elsewhere. Turning to the statistics, then, Family Rehab claims that ALJs reverse the lower-level reviewers' 30... Before we go into that, can I just clarify that you don't contest the first or the third Matthews factors in this case? That's right. Our position is that Family Rehab is identically situated to the provider in Sahara, and in Sahara, the court held that those two factors weighed in favor of the provider, but that the second Matthews factor, given the totality of the review, outweighed those two factors. Our position is we're not contesting those other two factors. We just think that, as in Sahara, the meaningful review available to the provider outweighs those factors. Okay, that's fine. You were getting ready to go into your argument regarding statistics, I believe. Yes. As I was saying, Family Rehab claims that ALJs reverse the lower-level reviewers' 38 to 44 percent of the time. Our brief explains why that claim misconstrues the raw statistics that are available through the Office of Medicare Hearings and Appeals website, and why those sort of raw statistics, even just looking to those on the website, in any event give a snapshot of only a narrow view of the entire administrative review scheme. You're only looking at cases that are appealed from the second-level reviewer to the ALJ level. I'm happy to discuss those two points further, but I think the most important takeaway is that even if you took Family Rehab's statistical arguments at face value, it would demonstrate at most that there should be further review of the second-level reviewer's decision. Family Rehab does not dispute that that review is available because you were able to escalate from the second-level reviewer, past the ALJ stage, to the Medicare Appeals Council, and ultimately to review in a federal district court. So for that reason, we don't think that these statistics are sort of constitutionally significant in any way. I'll also note that the court in Matthews said that bare statistics rarely provide a satisfactory measure of the fairness of a procedure. So to the extent Family Rehab is just pointing to statistics as the only new thing here, it doesn't seem like those statistics, especially ones that are this skewed, can bear the weight that Family Rehab is placing on them. It's sort of like judging how accurate a circuit a federal court of appeals is based on how many cases the Supreme Court reverses on cert. Yes. It's a very small sample that they're distorting. That's correct, Your Honor. If there are no further questions about the statistics issue for now, I will turn to the argument that Family Rehab raises that it would like to present testimony from its patients' providers. Let me ask you just, are there a batch of these kind of cases sort of in the pipeline somewhere? I mean, I would take it there would be a lot of providers that would be in a similar situation as the appellants here, Family Rehab. Is there any differentiation? I mean, we have Sahara, but pretty much all the circuits align with Sahara now says, or is there any different handling? So the accident and injury case that was cited in Sahara reaches the same conclusion. In terms of the other sort of cases in the Angels of Care, those are three related cases raising the same sort of procedural due process challenge. In terms of just whether there's other cases in the backlog, there are other cases still in the backlog. Although, if you look to the docket in the American Hospitals Association case in the D.C. District Court, the backlog is on track to be resolved by September 2022. And I believe HHS under that mandamus order out of the D.C. District Court has reduced the backlog by almost 80% now. So the backlog is on track to be eradicated. Okay, thanks. You press ahead. So yes, I just wanted to address the sort of claim that Family from its patients providers. Now, Congress may have provided an opportunity for the testimony by statute, but that doesn't mean that the opportunity to present that testimony is constitutionally required. Congress can, of course, provide more process than is required by the sort of constitutional minimum or the floor of the due process clause. And as this court explained in Sahara, a live hearing may be constitutionally required where credibility is critical. But like the provider in Sahara, Family Rehab has not asserted that anyone's credibility is at issue here, nor do we think could it. The overpayment dispute here turns on whether Family Rehab submitted adequate documentation to support its claims for payment. And as this court has noted in cases like Jones, it's difficult to see where credibility or veracity would come into play in a decision like that, that turns on applying organizational policies to a paper record. Is this sort of like summary judgment in the district court? How do you mean, your honor? In other words, just, you know, these are the types of things that can be reviewed based on the documents. We don't, we don't try every case that is filed at a federal court, we actually try to review of them. That's correct. This, this is absolutely a case that can be reviewed just on a paper records. And in fact, given this kind of dispute, where we have sort of medical reports, paper documents, that is actually the sort of determination that's best made on a paper record. It's well suited to determination on a paper record. The only, the only issue in terms of whether there was improper payment, is this lack of contemporaneous documentation? That's my understanding is that the vast majority of the determinations were based on the failure to submit adequate documentation to support the claims. If there are no further questions for now, I will reserve my time for rebuttal. All right. Thank you. Appreciate it. All right, Ms. Plowman. Family Rehab. I'm sorry. Can you hear me now? Yes. My name is, may it please the court. My name is Rebecca Plowman and I'm representing Family Rehab. On hearing today is Wesley Mannes on behalf of Family Rehab. And I'm joined today with my I've been practicing in this Medicare appeals administrative process for over 25 years. And I can tell you from my experience that the ALJ hearing is the most critical stage in this four level appeal process. Asking Family Rehab to skip that stage would severely prejudice its right by giving up its only opportunity for a hearing. Its only opportunity to be meaningfully heard in a meaningful manner. And although escalation is good to go to federal court eventually. Yes, your honor, but federal court simply reviews the first two levels of appeal. The first two levels of review, excuse me. So it's simply another review of the same paper record that the decision statistics demonstrate are being overturned at 38 to 44%. Those decisions statistics are exactly the situation that Family Rehab is in. These are the same providers, same types of providers who have received these two levels of review. They go to the ALJ stage and at almost 50% of those reviews are overturned at the ALJ stage. And why? What is the nature of the dispute between your client and HHS? It's the ability, your honor, to obtain the due process that Congress has created through... I'm sorry, let me be more clear. Let's assume you actually got this hearing. What are you going to be fighting about at the hearing? You're going to be fighting about the actual subjective medical reviews. And I will disagree with my colleague. The circuit courts have found that you cannot make these determinations on the objective records alone. I believe that my colleague stated that this is just whether the documentation is there or not, that's not true. The home health criteria... Why did HHS deny payments? Maybe I misunderstand the case. I thought HHS denied payments or sought recovery of payments, past payments, based on the lack of timely documentation that these patients were certified by your client as homebound. Do I misunderstand that? Is there something else going on? Yes, there is much more, your honor. There are the medical reviews to determine whether indeed these patients are homebound, not a matter of whether they submitted it timely. There's also a situation, and this is in the supplemental briefing... You want to defend the medical judgment of people being homebound or not? That's absolutely correct. And that's the majority of these claims. Is HHS fighting you on that? Well, if they don't allow us the opportunity for a hearing, they will be fighting us. And there are other pieces of the ALJ hearing that are critical here. There are legal arguments that are not... Solely on the ground that there was not proper documentation at the right time. Not that they're disagreeing with the accuracy of the certification or the accuracy of a particular medical judgment, but just literally the existence of paperwork. Am I mistaken? You are mistaken, your honor. That is not... That's what they're arguing is that this is just sort of a check the box. Is the form there or is the form not there? And that is not the agreement between these first two levels of review and family rehab. There are medical certifications that are... What part of the record should I be looking at? Go ahead, sorry. I'm sorry, your honor. In the supplemental briefing, we have laid this out in pretty specific detail and demonstrated that not only is it not a check the box sort of form analysis here, that we are challenging their decision that these patients were not homebound and those are subjective medical determinations that courts have said shouldn't be second guessed by a reviewer. On the credibility issue, if I could just real quickly, there is a credibility issue that's determined only at the ALJ stage, because at that stage, we determined that many of these reviewers don't even have the expertise in home health. They've never even taken care of home health care patients. And they're second the judgment of the physicians. In addition, at both lower levels of review, and this is in the supplemental briefing, the reviewers have applied a criteria that doesn't even exist. CMS rescinded the very criteria that these reviewers are using to deny the claims. Those are legal issues that are only addressed at the ALJ stage. So credibility is... Counsel, I don't mean to interrupt, and I know Judge Ho had asked several of the questions that I was going to ask, but let me, maybe this is a good time to follow up. What specific evidence would you present if you got this hearing? What evidence, what witnesses would you call? Are there additional documents? I understand, for instance, that you had expert reports that were already available, and that you get a provider who's actually provided the care for these patients, gets to testify in front of the ALJ. The ALJ, just as you guys are doing today, gets to ask a number of questions back and forth. And, you know, you'll typically have the contractors present. The ALJ, based upon the questions that you're asking, will ask contractors questions. So there's an opportunity for the record to actually go through each one of the claims. That doesn't occur at the first two levels. And just to step back a moment, these reviews, these first two levels of review occur within 60 days, when the original overpayment determination is based upon a year review. So they've taken a year to review these files, which are hundreds and sometimes thousands of pages. They've taken a year to review it, and yet we're supposed to believe that in 60 days, these are the same level of detail. Let me ask the question this way, because I want to make sure, maybe I've just fundamentally misunderstood what's going on in this case. Is your view that HHS has denied your client payment for patients for whom there was timely, full documentation of the certification, but they nevertheless denied payment despite that timely certification, because they disagreed with medical judgments that were made? Absolutely, your honor. And that occurs every day at these first two levels. No, no, no. You're saying it occurs every day. I'm talking about this case, your client. Yes, in this case. Absolutely. It happened in this case. And that's in your supplemental briefing. If you look, and all of this is part of the record, the determinations that the reviewers make, if you look at them, you will see that many of them are based upon a decision by the reviewers that these patients do not meet the homebound criteria. Not that there isn't documentation. What they've said is that there isn't a narrative in some of that documentation, and that's the criteria that was rescinded by CMS. It's not even applicable here. And yet, bringing up that at the same two levels, we still get the same decision by the same contractors that apply a criteria that is not applicable to these particular cases. And if I could just turn real quickly to escalation, because I want to make sure that the court understands that is not an adequate substitute. There is no hearing at the escalation stage. And it itself comes with an administrative backlog. The last published information was three years. So while the government wants you to believe that we could simply escalate to another level and get some sort of due process, that doesn't occur. There is no hearing. The D.C. Circuit Court of Appeals made that very, very clear in the mandamus action, that a hearing does not occur at the ALJ stage. And if you're looking at Congress's intent here, I just want to quote the D.C. Circuit Court of Appeals in the mandamus action brought by the Hospital Association. It says, if delays occurred only in isolated or occasional cases, escalation might suffice. Indeed, we agree with the Secretary that Congress's inclusion of the remedy in the statutory scheme indicates that Congress anticipated violations might occur with some measure of regularity. That said, nothing suggests that Congress intended escalation to serve as an adequate or exclusive remedy where, as here, a systematic failure causes virtually all appeals to be decided well after statutory deadlines. The ALJ appeal is also the first time that the provider is before a neutral arbiter. Before that, these are Medicare contractors who are paid to find inappropriate care. That's not just my words. That's in HHS, excuse me, Health and Human Services' own publications, that this is the only level that is independent from CMS and provides a fair and impartial ability to challenge the coverage and payment determinations made by these lower-level reviews. For providers... Let me ask, counsel, I want to make sure I understand what you referred to the supplemental brief in response to Judge Ho's questions. The dispute at this point, the implication of what happened in the district court, is that DHS can begin to recover monies that it believes it paid improperly or incorrectly or based upon information that was insufficient, okay? Isn't that what the denial of the hearing is at this point? Isn't that the implication of what we're hearing, is that you don't want the government to be able to start recouping monies that have been paid until you get the third level hearing? That's absolutely correct because that's what Congress intended. Most providers, and this is important to understand in this particular case, if they recoup $7.2 million, family rehab will be out of business before they ever get the opportunity to present their case before a neutral arbiter. Understood. Now, let me ask you, what is it that you don't get? I wasn't quite sure when you answered Judge Ho's question. What is it that you don't get at district court other than what you would consider to be a premature recoupment of money? What is it that you don't get at district court that you would get at the third level hearing? You get the opportunity to fully develop the record and address the legal issues that are not addressed at those first two levels. If this simply goes through escalation, all that goes through is that same paper level review based upon erroneous legal conclusions, and the judicial court is required to simply give deference to those first two levels. The ability to actually develop the record is never granted to the provider. They never get that meaningful opportunity to be heard if this goes through escalation. Would it be fair if I considered the district court hearing to be akin to something like a social security appeal? Is that what you're arguing, that the district judge will be limited to a review of the existing record? That is absolutely correct. That is the regulation that they are required to give deference to those first two level reviews. All the judicial review would be is simply another review of the same record that is being overturned at the ALJ stage by almost 50%. Okay. And then lastly, and again, Judge Ho may have asked this, but I want to make sure that I understand your answer. You're arguing that this dispute is based upon some disqualification of payments based upon the certification or improper certification or lack of certification of the patients to receive care or DME or whatever it is that's been provided. In other words, you're not agreeing that this is a case that involves a document deficiency. That is correct, Your Honor. And the courts who have looked at the medical review have stated that you can't make these determinations by objective evidence alone, that the medical cold paper medical record is not sufficient, and that when this involves a treating physician certification, which these cases do, a medical reviewer cannot second guess the treating physician. And the treating physician, which is what we would be presenting in testimony, is entitled to great deference. That's not done at the first two levels of review. All right. Let me ask you this. Putting aside for a moment all the arguments you've made, I still don't see what's different about the procedural due process argument that you're making and explaining to us quite fully. But it still looks to me that the court in Sahara had the same head-on procedural due process issue, no real process before the ALJ hearing. I mean, the same layers of what you're making. So without getting to whether that's a good argument, bad one, whatever, you know that one panel can't overrule another one. So I still don't know how, why this case, given what the core issue is, is distinctive from what the court addressed in Sahara. So you need to address that. Even if we were to agree with everything you've said, I don't see the main claim you're making here, the due process code, is different in quality. Yes, it's a different plaintiff. Yes, they're different amount of money. Yes, all that. But at bottom, that's what the panel in Sahara addressed. The district court embraced the notion, well, if they have to pay, it'll put them out of business. And so it was that same argument of putting out a bill. I mean, it sounds to me you're making a front attack on the whole congressional scheme that's been put in place, which is a valid argument, but that's the Congress. So help me understand how we distinguish Sahara and say, well, Sahara was that, but this case is this. Well, thank you for asking that question, Your Honor. This case is not Sahara. There are many differences. One, Sahara did not have the factual record that was presented in family rehab. Sahara did not answer the court's question as to what is so critical about an ALJ hearing. But that's not the question I'm asking, but you tell me that. I'm so sorry. The basic deprivation of due process is the core argument that was made below. So answer that first. I mean, why is this a substantive due process argument here and it was procedural there? Is there some other constitutional? I mean, that's the part of saying, I don't know what you're saying about the distinctions in the record, the papers, the payments. Obviously that's different, but it just still seems to me the constitutional argument is what was made and that's what the court ruled on. It wasn't an ancillary holding. That's what they ruled. So help me. Absolutely, Your Honor. Throughout Sahara, you will see that the court said, you're not explaining to me why this ALJ hearing is so critical. We did that in family rehab. There was a preliminary injunction hearing. There was a lot of documentary evidence, including the decision statistics. And while my colleagues seem to downplay them, what they demonstrate is there is something critical about this ALJ hearing that is provided only at the third level. If you don't get the hearing, the risk of erroneous deprivation is severe. And you look at the decisions that were made at the lower level, one of them was overturned. It resulted in a $330,000 difference in the extrapolated overpayment. If you overturn 50% of those, that's extremely significant. And you will never get that at any other stage. So the due process minimums to be meaningfully heard only occurs at that ALJ stage. And in Sahara, that was never presented to the court. It was also never presented what the deficiencies are in escalation process that doesn't provide for due process. There is no hearing and you're in the same backlog. So the provider is simply out of business. And Your Honor, we're not challenging the constitutionality of what Congress put in place. All we are asking is that this court stay the recoupment until such time as family rehab obtains the due process it's entitled to under the statute. Escalation was simply a door that Congress provided. But what HHS has done is made it into a wall. This is sort of like a Kafka novel where you're at the halls of justice, but you're not admitted. Your Honor, if I could just say one last thing in my few moments. For providers such as family rehab, should this court find that the ALJ hearing is not necessary for providers to receive procedural due process, escalation will have swallowed the protections afforded by Congress when it granted CMS the discretionary authority to recoup after the second level. And as the DC Circuit Court of Appeals found, this escalation is not a remedy entitled to provide the due process, nor does it even provide the expediency that the government has alleged occurred. Thank you. All right. Thank you, Ms. Bowen. Appreciate your arguments. All right. We're back to you, Ms. Edwards, your rebuttal. Thank you, Your Honor. I want to clear up just a few things. The first thing I want to talk about is what the nature of the overpayment dispute is here. My colleague was talking about the supplemental brief that they filed. And the supplemental brief that they filed says that family rehab's precise argument through the administrative appeal process is that it has provided the proper documentation to support the services being covered, but the review process has erred in determining the documentation was sufficient. So what I think that that shows us is that what we're dealing with here is truly a dispute over the adequacy of documentation. Now, as the district court found in its summary judgment opinion, the initial determination based a substantial majority of the findings on family rehab's alleged failure to properly certify its patients as homebound. So some of the documents simply just don't exist, or at least that was what the auditor found. The documents don't exist. The documents weren't signed or properly dated. I believe what my colleague is trying to argue is that there is some dispute about the clinical justifications within the documents as well. But even if that's the case, this is still an argument about the adequacy of documents. And that is the type of dispute that can be resolved on a paper record and is indeed well on a paper record. If you look to Matthews v Aldridge, to the disability benefits determinations at issue there, those two turned on medical reports and medical documentation. And the court held that it was not required to have an evidentiary hearing before the deprivation evidentiary hearing. So I think, and this court has said in cases like Dole and turns on matters of expert judgment rather than credibility, the value of a live hearing or cross examination is not apparent. So again, this takes us back to Sahara, which we believe controls this case squarely. Sahara said that cross examination or live hearing may be required where credibility is at issue. But there really are no credibility issues here. I believe my colleague said that there were, but it didn't actually spell out either in the briefing or here today, what those credibility issues are, you know, the sort of providers that council suggests the family rehab would call at a future ALJ hearing, their credibility is not at issue. All they would be talking about is the care that, at least as council has described it, is the care that their patients required and received, which is information that was required to be documented at the time and properly certified. So that's the first point I want to make. The second point is just to return briefly to the statistics. My colleague said repeatedly that nearly 50% of these cases are overturned at the ALJ level, and that is just not accurate as we've cited in our briefs. In fact, of the cases that are appealed from the second level reviewer to the ALJ level, only 17.3% of those are fully favorable. 1.1% are partially favorable. More than that, 20.9% are unfavorable and 60.7% are dismissed. So that 50% number that's being quoted is just a manipulation of the raw data that's available. I have one question. I'm glad you referred us to the district court opinion, which I'm looking at now. It says on page three that the ZPIC based a substantial majority of the findings on family rehab's alleged failure to properly certify patients as homebound. So a substantial majority, according to district court, was based on, I guess, documentation problem. Substantial majority is not all. What else is going on here besides these certification issues? My understanding is that all of the issues here, whether they relate to the specific certification document or to the other documents that are required to substantiate a claim for payment, all of those are, again, document-based determinations. So the finding here was just that family rehab failed to submit adequate documentation to support its claims, whether that is documentation that is properly signed and dated or whether it's documentation that adequately explains why a person is homebound. Your point then, just to be clear, is you disagree with opposing counsel that there are any medical judgment disagreements at issue here? I am not sure to what extent the disputes turned on medical judgment decisions. Our point has been that the determination here turns on the sufficiency of documents. And so even if we've cited examples where the issue with the documents was just that there was no proper signature, no narrative, they were dated from the wrong time period, but even if there are issues in there that relate to medical judgment, those sorts of issues, those sorts of disputes about the sufficiency of a medical justification are the type of disputes that are suited to a paper record review and don't require, in terms of the Constitution, don't require a live hearing. Any other questions about a panel, Judge Engelhardt, Judge Ho? Anything different? Any additional? All right. Thank you, counsel. We have your argument along with the briefs. The case will be submitted. Thank you. Thank you. Thank you.